56 CCPA

**Application of Detlef WINKELMANN.**

**Patent Appeal No. 8160.**

United States Court of Customs
and Patent Appeals.

May 29, 1969.

See also, Cust. & Pat.App., 392 F.2d 663.

———◆———

James E. Bryan, Washington, D. C., for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents; Joseph F. Nakamura, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, DURFEE and NEESE, Judges, sitting by designation, and ALMOND and BALDWIN, Judges.

RICH, Acting Chief Judge.

This appeal is from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, affirming the rejection of claims 2–13 and 27 of application serial No. 146,256, filed October 19, 1961, entitled "Heat-Copying Process." No claim is allowed.

Appellant's invention relates to a heat-copying process in which a latent heat image is formed on a surface of a heat-softenable resin layer by exposing it to radiant heat through a master which is to be copied. The latent image is rendered visible by applying a semi-solid or highly viscous developer paste to the imaged portion of the resin layer. The paste is subsequently "fixed" by heating if it does not air dry.

As explained by appellant, the heating process differentially alters the wettability of the imaged and non-imaged areas of the resin layer; that is, one will be water-receptive (hydrophilic), and the other water-repellent (hydrophobic). A developer paste that will wet only the imaged area is ordinarily used.

The developer paste comprises a liquid carrier and one or more powders. Examples of suitable carrier liquids are water; alcohols such as methanol, ethanol, and propanol; aromatic hydrocarbons such as benzene, toluene, and xylene; and oils such as linseed oil, varnish, and wood oils. The powders may be organic and/or inorganic, colored or uncolored substances such as glass powder, inorganic pigments, and organic dyestuffs. Other materials, such as waxes and synthetic resins, may be added to increase the viscosity and adhesion characteristics of the developer paste.

The following, Example 1 of appellant's application, may help to visualize how the process is practiced:

A transparent document, to be reproduced, is placed on a layer * * * of a ketone resin with a softening temperature of 67–82° C, which is supported on a paper * * *, in such a

manner that the text is legible from above. The two together are passed * * * in close proximity to a powerfully focused infra-red rod radiator, with the master [document] next to the radiator. The master [the document] and the synthetic resin layer, which now carries a latent heat image, are then separated from each other. The image-bearing layer is then tested for hydrophilic properties in the image parts thereof by a light wiping over with a sponge wetted with water. As the parts are seen to be hydrophilic [wettable by water], in the development, which is affected by roller application, a paste is used which is prepared by intensive mixing of the following components:

7% by weight of rice starch,

5% by weight of lamp black,

9% by weight of ethanol, and

79% by weight of water.

The paste dries in the air and gives reproductions which are resistant to rubbing. In order that the paste will be held more smoothly on the roller, a sponge which has been slightly moistened with water may be pressed against the inking roller.

The following claims are representative, 27 being the sole independent claim:

27. A process for developing a latent heat image formed in a heat-softenable resin layer by exposing the layer to radiant heat through a master which comprises treating the layer with a viscous developer paste comprising a vehicle and a thickener.

8. A process according to claim 27 in which the developer paste contains a wax.

5. A process according to claim 27 in which the vehicle is selected from the group consisting of water, an alcohol, an aromatic hydrocarbon, an oil, and mixtures thereof.

All claims are "rejected under 35 U.S. C. 103 as embracing a process made obvious by the prior art"; two United States patents and a publication are relied on:

| | | |
|---|---|---|
| Shoemaker | 2,764,085 | Sept. 25, 1956 |
| Huebner | 1,669,416 | May 15, 1928 |
| Apps, | Printing Technology, 341–60 | (1958). |

Shoemaker, the primary reference, discloses a method of producing an imaged lithographic plate by exposing a coated base sheet to infrared radiation through a master to form a water-repellent, ink-receptive imaged portion on the water-receptive, ink-repellent coating. The sensitivity of the coating derives from the presence of an insolubilized "Werner complex" (a chromium compound, the structure of which is not important here). According to Shoemaker, the Werner complex "provides a hydrophilic water receptive surface upon insolubilization and * * * becomes ink receptive and water repellent upon thermal reaction." The Patent Office places particular emphasis on the following disclosure in Shoemaker (emphasis ours):

* * * the Werner complex * * * may be used to form a *lithograph* surface having the described characteristics wherein instead of being applied alone onto the base sheet or coated base sheet, it is incorporated as an ingredient with the hydrophilic colloid coating of the type heretofore employed in the manufacture of lithograph plates, as set forth in the patents previously pointed out. In such instances reliance is still had upon the development of a heat pattern or application of heat for thermal conversion of the complex from a water receptive material to a water

repellent and ink receptive surface. Such modification may include the addition of the Werner complex compound in amounts ranging from 2–20 percent in the hydrophilic colloid coating based upon casein, *polyvinyl alcohol,* alginates, and carboxymethyl cellulose *formulated in the manner described in the prior art patents.*

It should be noted that the product obtained by the Shoemaker process is a lithographic plate which is employed in a printing process (such as on paper) to produce a plurality of reproductions of the master from which it was made. In appellant's disclosed process, on the other hand, the product itself is the desired reproduction; it is not used to produce additional copies.

The Huebner patent and Apps reference are relied on for their disclosures of various types of inks which may be used in lithographic printing.

In affirming the § 103 rejection, the board tacitly acknowledged that appellant has *disclosed* a patentable invention. The board took the position, however, that appellant's claims are so broad as to read on an obvious modification of the Shoemaker process. Specifically, the board stated:

Appellant here has presented claims which are so broad as to embrace the use of known lithographic inks [Huebner and Apps] on a known lithograph plate [Shoemaker] to obtain the usual and expected inking or "development" of the image areas of that plate. The claims at bar do not require the resin layer to be actually softened by the radiant heat nor do they preclude the presence of other materials in the resin layer, such as the Werner complex compound of Shoemaker et al. Since polyvinyl alcohol is a thermoplastic resin, it necessarily has the property of being heat-softenable as so broadly specified

by the appealed claims. Appellant's reference in his reply brief to the darkening of polyvinyl alcohol at temperatures above 100°C. is not persuasive of any patentable difference since the claims on appeal do not specify any operating temperature and the resin is defined by the claims so broadly as to include polyvinyl alcohol.

In response to this appellant first contends that the *record* does not establish polyvinyl alcohol to be "thermoplastic." Although we tend to agree with appellant on this limited point, it is nonetheless clear from the record that polyvinyl alcohol is "heat-softenable," and that expression, not "thermoplastic," is the limitation recited in claim 27, the only claim which refers to the resin.

Appellant also points out that in the resin layer of Shoemaker the polyvinyl alcohol is in *admixture* with *minor amounts* of the Werner complex and a bivalent metal salt.* From this appellant argues that such a layer cannot be properly termed a "heat-softenable resin layer." We might well agree with appellant if polyvinyl alcohol were only a minor ingredient in such a layer. Here, however, the layer is almost exclusively polyvinyl alcohol, and we therefore consider appellant's argument not well taken.

Regarding the Apps and Huebner references, appellant argues that disclosures of "lithographic inks" are irrelevant inasmuch as his invention involves the use of a "viscous developer paste." This may well be true as to the specific process that appellant has disclosed, but the rejection is directed to what appellant has claimed. Since we agree with the board that appellant's claims are broad enough to embrace the "development" of one of the types of lithographic plates disclosed by Shoemaker, we need only decide whether it would be obvious to apply a viscous or paste-like ink to such a plate. We are convinced that it would by the

---

* Inclusion of such a salt is taught by one of the "prior art patents" referred to

in the above-quoted paragraph from Shoemaker.

following disclosure in the Apps reference:

ESSENTIAL PROPERTIES OF
LITHOGRAPHIC INKS

\* \* \* \* \* \*

(3) Suitable inks have plastic viscosities of 500 p.–2,000 p., which means that stouter inks are used by lithographers than typographers. Litho inks are often described as medium-stiff; the inks should be short and buttery but give readily under pressure.

In addition to the arguments relating to claim 27, appellant has advanced arguments based on limitations of seven of the thirteen dependent claims. However, as none of these claims limits in any way the recitation of "heat-softenable resin layer" in claim 27, we consider the § 103 rejection to be equally applicable to them.

Since the § 103 rejection of all claims was proper, it is unnecessary for us to consider another rejection of claim 5.

The decision of the board is affirmed.

Affirmed.